**[Cite as *State v. Allison*, 2025-Ohio-484.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 221 |
| | : | |
| JORDAN EMERSON ALLISON | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 14, 2025

. . . . . . . . . . .

DONALD K. POND, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Jordan Emerson Allison appeals from his convictions in the Champaign County Court of Common Pleas for strangulation, abduction, and violating a protection order. Allison claims that the trial court violated his constitutional right to due process of law because he was denied "the right of full and unimpeded

allocution prior to the imposition of sentence." For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In December 2023, Allison was indicted on four counts of strangulation, one count of abduction, one count of intimidation of an attorney, victim, or witness in a criminal case, and two counts of violating a protection order. On January 3, 2024, Allison pleaded guilty to one count of strangulation (Count 1), the abduction offense (Count 5), and one count of violating a protection order (Count 7). In exchange for his guilty pleas, the State offered to recommend dismissal of the remaining counts of Allison's indictment. Allison stipulated that the three offenses to which he pleaded guilty were not allied offenses of similar import and did not merge for purposes of sentencing; however, there was no sentencing recommendation, and the parties were free to argue about the sentence to be imposed. The trial court found Allison guilty of the three offenses to which he pleaded guilty, dismissed the remaining offenses, and ordered the completion of a presentence investigation report ("PSI").

{¶ 3} On February 3, 2024, the trial court, having obtained a victim impact statement and a PSI, proceeded to sentence Allison. The State spoke first and recommended that the trial court impose a minimum seven-year prison term with respect to the strangulation offense, a felony of the second degree, and a definite 30-month prison term on the abduction offense, a felony of the third degree.[1] The State also recommended that the two prison terms be served consecutively to each other. In response, Allison's

---

[1] The State did not recommend a sentence with respect to the offense of violating a protection order, a misdemeanor of the first degree.

counsel stated that Allison understood "the real likelihood that he is doing prison time in this case" but asked the trial court to "consider concurrent sentencing." Thereafter, the trial court asked, "Is there anything you would like to say Mr. Allison?"

{¶ 4} Allison began his statement by expressing a desire to apologize to the victim. Allison's statement was interrupted when his counsel directed him to "[f]ace forward." The trial court instructed Allison as follows: "You can face me. But [the victim] can hear what you would like to say." Allison's statement followed:

> I would just like to tell her that I'm truly, in the deepest of ways, sorry. And I did not mean for any of this to happen. This is not where I saw our relationship going. This isn't how I wanted things to end. And I just want to apologize for all of it. I'm deeply sorry.

After Allison finished speaking, the trial court asked him: "Does that complete your statement?" Allison replied, "Yes."

{¶ 5} The trial court then asked the parties a series of questions pertaining to the factors set forth in R.C. 2929.12. The trial court asked whether the defendant and the victim had been using drugs or alcohol at the time of the commission of the offenses. In response, Allison told the court that both he and the victim had been using cocaine. The trial court then questioned Allison about his history of substance abuse, which was referenced in the PSI, and the extent to which he had previously engaged in violent criminal behavior. This discussion of Allison's history of violence led to questions about the circumstances leading to his conviction for violating a protection order, which in turn

led to a discussion of the circumstances of a separate case of violating a protection order involving the same victim that was pending in the Champaign County Municipal Court.

**{¶ 6}** Allison offered an innocent explanation for the conduct charged in the municipal court case; however, the trial court dismissed his account of the events as unbelievable, saying: "Oh, come on."[2] When Allison attempted "to tell [the court] the truth" about his conduct a second time, the court dismissed his previous explanation as untruthful and ended the discussion "to respect [Allison's] right against self-incrimination." This back-and-forth over the circumstances of the municipal court case ended when Allison's counsel advised him: "Don't say anything else."

**{¶ 7}** The trial court imposed an indefinite 8 to 12-year sentence for the strangulation offense, a definite 36-month prison term for the abduction offense, and a 180-day jail sentence for violating a protection order. The trial court ordered that the prison terms run consecutively to each other but concurrently with the jail sentence.[3] Allison filed a timely notice of appeal.

## II. Right to Allocution

**{¶ 8}** In his sole assignment of error, Allison claims that "[t]he trial court erred by impeding the allocution of Jordan Allison . . . prior to the imposition of sentence, contrary to due process of law, pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

---

[2] Appellate counsel for Allison refers to his client's explanation as "preposterous" and "ill-conceived." Appellant's Brief, p. 6.

[3] Allison's judgment of conviction appears to contain a typographical error: "the total stated prison term is thirty-six (36) months plus a minimum of eight (8) years to *thirty-six (36) months plus* a maximum of twelve (12) years." (Emphasis added.)

{¶ 9}   A criminal defendant's right to allocution is "firmly rooted in the common-law tradition." *State v. Massey*, 2007-Ohio-3637, ¶ 15 (5th Dist.), citing *Green v. United States*, 365 U.S. 301, 304 (1961). "The purpose of affording a defendant the right to speak at sentencing is to allow the defendant an opportunity to state for the record any further information which the judge may take into consideration when determining the sentence to be imposed." *State v. Conkle*, 2012-Ohio-1772, ¶ 41 (2d Dist.), citing Crim.R. 32(A).

{¶ 10} In the present day, R.C. 2929.19(A) and Crim.R. 32(A) secure a criminal defendant's right to allocution. "R.C. 2929.19(A) and Crim.R. 32(A)(1) unambiguously require that an offender be given an opportunity for allocution whenever a trial court imposes a sentence at a sentencing hearing." *State v. Jackson*, 2016-Ohio-8127, ¶ 10, citing *State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph one of the syllabus. A criminal defendant has a right to "present information relevant to the imposition of sentence in the case," and the trial court must "ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender." R.C. 2929.19(A). Likewise, a trial court must "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim.R. 32(A)(1).

{¶ 11} This right to allocution is "much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000). So important is a criminal defendant's right to allocution that we recently described it as "absolute" and "not subject to waiver by failing to object."

*State v. Champeau*, 2024-Ohio-4602, ¶ 12 (2d Dist.), citing *Campbell* at 324-325. However, the denial of the right to allocution "is an error which is neither jurisdictional nor constitutional." *Hill v. United States*, 368 U.S. 424, 428 (1962); *accord State v. Anderson*, 2024-Ohio-4735, ¶ 4 (9th Dist.) ("The right to allocution, however, is not constitutional."); *State v. Brill,* 2023-Ohio-404, ¶ 16 (3d Dist.) ("Although not considered a constitutional right, the right of allocution is firmly rooted in the common-law tradition."), citing *State v. Massey* at ¶ 15. Accordingly, to the extent that Allison's assignment of error argues a violation of the United States or Ohio Constitutions, we must reject his argument.

{¶ 12} Although Allison has argued his assignment of error in constitutional terms, we will consider whether the trial court complied with R.C. 2929.19(A) and Crim.R. 32(A)(1). "A trial court complies with a defendant's right to allocution when it personally addresses the defendant and asks whether he or she has anything to say." *Champeau* at ¶ 11, citing *State v. Frazier*, 2019-Ohio-1546, ¶ 18 (2d Dist.); *State v. Osie*, 2014-Ohio-2966, ¶ 180. Here, the record reflects that the trial court personally addressed Allison and asked him whether he had anything to say. The record also reflects that Allison affirmatively exercised his right to allocution by expressing remorse to the victim for his offenses.

{¶ 13} This is not, as Allison has argued, a case in which the trial court cowed a criminal defendant into silence. For example, in one of the cases Allison cites, the defendant attempted to allocute, but the trial court "cut him off and said 'My turn to talk. No, no, no, no.' " *State v. Farhat*, 2022-Ohio-1716, ¶ 15 (11th Dist.). Thus, the defendant was completely deprived of "an opportunity to address the substance of his offense, offer

any mitigating considerations, speak to his lengthy criminal history, or to express remorse for his actions." *Id*. Here, in contrast, the trial court interrupted Allison's statement just once – and only briefly – to instruct him to speak directly to the court. Allison then resumed his statement without further interruption. After Allison finished his statement, he confirmed to the court that his statement was complete. Thus, we are not persuaded that the trial court "stymied" Allison's right to allocution. *See State v. Roach*, 2016-Ohio-4656, ¶ 16 (7th Dist.) (noting that "even if a court interrupts a defendant's allocution, his right is not violated if he is permitted to speak after the interruption").

{¶ 14} To the contrary, the record demonstrates that the trial court gave Allison ample opportunity to explain himself throughout the sentencing hearing. Although Allison clearly desired another opportunity to explain the circumstances of his municipal court case, we find no error in the court's decision to terminate the discussion and pronounce the sentence. Moreover, the transcript reveals that it was Allison's counsel – not the trial court – who interrupted his final effort to address the court. Therefore, Allison's claim that the court violated his right to allocution pursuant to R.C. 2929.19(A) and Crim.R. 32(A)(1) lacks merit.

{¶ 15} Because we have determined that the trial court did not err in denying Allison the right to allocution, we need not consider the State's argument that he invited any error.

{¶ 16} Allison's sole assignment of error is overruled.

### III. Conclusion

{¶ 17} Having overruled Allison's assignment of error, we will affirm the trial court's judgment.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.